IN U. S. DISTRICT COURT

DISTRICT OF COLUMBIA

LA VERNE KOENIG,
15520 Hwy 200A SE
Blanchard, North Dakota 58009
(701) 430-0096

        Plaintiff,

v.

E. SCOTT PRUITT, as Administrator of
United States Environmental Protection Agency;
1200 Pennsylvania Ave. N.W.,
(WJC North) 1101A,
Washington, DC 20004;

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,
Ariel Rios Building
1200 Pennsylvania Ave., NW
Washington, DC 20460;

STATE OF NORTH DAKOTA,
Attorney General of State of North Dakota,
State Capitol, 600 E. Boulevard #125
Bismarck, North Dakota 58505;

TRAILL COUNTY WATER RESOURCE DISTRICT
Traill County Courthouse,
102 1st St SW, PO Box 10,
Hillsboro, North Dakota 58045;
JASON LOVAS,
607 5th Ave SE
Hillsboro, North Dakota 58045;
ANDY NESET
15449 4th St NE
Mayville, North Dakota 58257;
JASON SIEGERT
168 167th Ave NE
Hillsboro, North Dakota 58045;

Case: 1:18-cv-01169
Assigned To : Unassigned
Assign. Date : 5/18/2018
Description: TRO/PI   **(D-DECK)**

- 1 -

GARY THOMPSON,
1045 150th Ave NE
Mayville, North Dakota 58257;
JOEL HALVORSON,
15205 10th St SE
Galesburg, North Dakota 58035;
NETTIE JOHNSON,
c/o Traill County Water Resource District
Traill County Courthouse
102 1st St SW  PO Box 10
Hillsboro, North Dakota 58045;

BLANCHARD TOWNSHIP BOARD
OF SUPERVISORS;
STEVE VOLLA,
239 Hwy 18 SE
Mayville, North Dakota 58257;
JEFFREY HENN,
563 Hwy 18 SE
Blanchard, North Dakota 58009
STEVE HILSTAD
15395 3rd St SE
Mayville, North Dakota 58257;

TRAILL COUNTY SHERIFF DEPARTMENT;
Traill County Courthouse
114 W. Caledonia Ave, P.O. Box 279
Hillsboro, North Dakota 58045
STEVE HUNT, Sheriff of Traill County,
114W. Caledonia Ave, P.O. Box 279
Hillsboro, North Dakota 58045;
DEPUTY KELLY
c/o Traill County Sheriff Department
114 W. Caledonia Ave, P.O. Box 279
Hillsboro, North Dakota 58045;

MOORE ENGINEERING
925 10th Ave E
West Fargo, North Dakota 58078;

OHNSTAD TWICHELL LAW FIRM
444 Sheyenne St. #102
West Fargo, North Dakota 58078;

SEAN M. FREDRICKS
444 Sheyenne St. #102
West Fargo, North Dakota 58078;

CURTIS B. REIMER
363 166th Ave
Hillsboro, North Dakota 58045;
STACEY REIMER,
363 166th Ave
Hillsboro, North Dakota 58045
DEFENDANTS.

# COMPLAINT

## INTRODUCTION

1. This suit presents questions of whether federal and state agencies may lawfully decline to exercise their duty and authority to protect the waters of the United States from deliberate acts of poisoning, pollution and destruction under the Clean Water Act contrary to the direction of Congress.

2. This suit raises several questions of federal law concerning the Clean Water Act, Civil Rights Act, Due Process of Law, Equal Protection of Law, Freedom of Choice, Freedom of Occupation, the right to protect the Environment from poisonous runoff into a federal waterway and onto private property and denial of right to be heard, denial of right to protect one's property from deliberate and intentional poisoning of one's property and livestock by an adjoining landowner.

3. It further raises the issue that the EPA has failed to properly protect the public in its failure to implement rules, regulations, and procedures that would aid the organic farmers in preventing deliberate and intentional poisonous runoff from entering their property and/or into federal waterways.

4. The State of North Dakota fails to protect the public, the organic farmers in its failure to have statutes that aid the organic farmers and the general public in the prevention of poisonous runoff onto their property and/or into federal waterways.

5. The suit requests declaratory, injunctive and monetary relief. All defendants are sued in their individual as well as official capacities.

## JURISDICTION:

6. This is a Federal Civil Rights Action, the Courts jurisdiction exists under 42 U.S.C. 1983; 1985; 1988; Clean Water Act, 33 U.S.C. 1251 - 1388; and other federal water acts. The Court also has ancillary jurisdiction over the State Law issues.

ENVIRONMENTAL PROTECTION AGENCY

7. Scott Pruitt, is the administrator of the Environmental Protection Agency, 1200 Pennsylvania Ave NW, Washington DC 20004, a Federal Governmental Agency whose mission is to protect human and environmental health. [Hereinafter referred to as "EPA"] Born in the wake of elevated concern about environmental pollution, established on December 2, 1970 to consolidate into one agency a variety of federal research, monitoring, standard-setting and enforcement activities to ensure environmental protection.

8. EPA has failed to set standards that would allow organic farmers, e.g., non-poisonous, non-chemical farmers and landowners to prevent poisonous runoff onto their property from those farmers, individuals, corporations that do utilize such poisonous chemicals and products.

9. EPA enforcement procedures are grossly lacking, in meeting and protecting the due

- 4 -

process and equal protection standards that would aid the organically farmed properties, lands, and other holdings, from being deliberately and intentionally polluted by the poisonous, chemical farmers, individuals etc.

10. EPA has authorized the respective States to carry out their enforcement, which, the State of North Dakota has no intent to protect the environment on behalf of the citizens, or the organic farmers, and the downstream citizens, its only interest is to protect their sources of income. Water is considered a liability not an asset.

11. The State of North Dakota [hereinafter referred to as "State"] statutes, authorizes State officials to investigate claims for poisoning, etc, but they are prohibited from testifying about their findings, giving discretion to levy fines on the respective violator for the violation. Not aiding or protecting the people, only aiding in the collection of revenue for the state.

12. State laws violate the Freedom of Choice rights, by granting the chemical farmers an apparent superior right to drain their poisonous runoff onto the organic farmers property, allowing the District to compel the removal of any dams, dikes, or levies that may prevent the runoff.

13. State laws violate the Freedom of Occupation rights, by also granting the chemical farmers the right to drain their poisonous runoff onto the organic farmers property, in essence granting the chemical farmers a superior right to farm over that of the organic farmers right to Freedom of Choice not to use chemicals on his farm, property or allow the poisonous runoff into a federal waterway.

14. State laws lack all or any mandatory requirements that meet the Federal Due

Process and Equal Protection Standards. A complaint may be filed. NO requirement that the accused receive a copy of the Complaint from the enforcement agency. A hearing on the Complaint may be held. NO requirement that the accused be informed of the pending hearing date or even be allowed to be heard, prior to any decision by the enforcement agency. An arbitrary time frame in which to appeal. No requirement that the accused have received ACTUAL NOTICE OF THE DECISION, before the appeal time begins to run.

15. EPA and STATE have no statute(s) that grants or allows the organic farmers the right to prevent poisonous runoff from entering their property from the chemical/poison farmers property, violating the organic farmers right to freedom of choice, freedom of occupation, by denying him the right to prevent poisonous chemicals from entering his property.

16. Defendant Reimer's posted signs that poison is being used that is hazardous to livestock should result in immediate statutory authorized and enforced requirements that the poisonous runoff be contained by containment ponds, levies and/or dikes on Reimer's property, with mandatory pumping thereof to be back onto the subject property.

17. Reimer's posted signs, that poisons are being used, the poisonous runoff onto Koenig's lands and thereafter into the federal waterway could seriously injure and affect the health and welfare of millions of people downstream and unknown numbers of livestock, should have warranted a mandatory containment pond to protect the health and welfare of people and livestock downstream.

18. Based on information and belief, Reimer is mentally unstable, and maybe out to kill

millions of people, with the aid of the Traill County Water Resource District (hereinafter District) and livestock, by and through deliberate and intentional introduction of poisonous runoff into the federal waterway. Reimer is intentionally using District to aid and abet in his criminal activities of introducing poison into a federal waterway and to poison Koenig's livestock.

19. Based upon information and belief, Reimer has already poisoned livestock of Koenig's, has deliberately and intentionally poisoned over 200 of Koenig's trees; has deliberately and intentionally destroyed Koenig's fences in order to allow his livestock to get out onto Reimer's poisoned farm land, wherein standing poisonous runoff may have/or has accumulated.

20. Koenig has had County Agent out to inspect his dying trees, which Agent stated that they had been poisoned. Defendant Reimer is only farmer that applies direct poisonous chemicals would have caused Koenig's trees to be poisoned and die, and including livestock.

21. THE COMPLAINT [TO DISTRICT] BY DEFENDANT CURTIS REIMER WAS TOTALLY FALSE. Koenig had never done any form of dirt work in 2016, as alleged by Reimer or any other year; has never restricted the flow of the illegal poisonous runoff from the Complaint's property. Defendant Reimer has annually dug down his property, giving the illusion that Koenig has erected a dike, embankment to restrict the runoff.

22. Plaintiff Koenig hasn't had operational equipment, to do dirt work, or the time to do it, and has been physically incapable of doing it, nor the funds to hire someone else to do it.

23. Koenig is presently awaiting the surveyor to complete the final survey of the property lines, replacing the survey markers that Reimer has deliberately removed, before undertaking any form of dirt work or fence repairs.

24. Defendant Reimer has personally told Koenig that they [him and his employees] have destroyed/removed survey markers over the past years, of which, it is believed to be a violation of State and Federal law to deliberately destroy survey markers.

25. Koenig has hired a land surveyor to redo/restake/replace the missing survey markers, of which, Defendant Reimer's has again been destroying/removing, with the intent of encroaching upon Koenig's property and further poisoning his trees, property and livestock.

26. Koenig's complaints to the Traill County Sheriff Department [HEREIN after TCSD] have been to no avail, whereas, TCSD has a practice of selective, discriminatory law enforcement, Sheriff Steve Hunt, has aided and abetted in felonious criminal activities, engaged in selective investigation and committed perjury in criminal matters.

27. Defendant Reimer's has deliberately destroyed Koenig's fences, trashed his property, which Koenig's complaint to the TCSD have resulted in no action against Reimer, whom lied to law enforcement about his actions.

28. Defendant Reimer has represented to TCSD Deputies, Danielle and Kelley, that he had a permit to clean a culvert. He called Blanchard Township board member Steve Hillstad, whom represented it was a written permit. These representations were knowingly false.

29. Blanchard Township Board [hereinafter Blanchard] Clerk Jim Johnson represented he

wasn't aware of any permit being requested; no hearing on the permit was ever held, and that no written permit was or has ever been issued.

30. Township Clerk has stated to Koenig that the Defendant Blanchard is in violation of North Dakota's Open Meeting Laws, never holding open meetings at the township hall; never posting minutes of meetings; never informing residents of upcoming meetings, by and through postings, that this practice has been ongoing for many years by present board.

31. Thus Defendant Reimer and Blanchard member Hillstad, falsely represented to TCSD that Reimer's had a written permit. Said Deputies, deliberately failed to do any follow up investigation to determine that the representation was in fact false, thereby aiding and abetting in Reimer's criminal activities and selective enforcement of the law.

32. Koenig had requested that Defendant Reimer be charged with criminal trespassing, destruction of private property, he was digging a deep ditch next to Koenig's fence in an attempt to weakened the post so the fence would fail, yet TCSD selective investigation and law enforcement practices failed to charge Reimer's with any criminal violations, thereby violating Koenig's Due Process and Equal Protection of law rights, through their aiding and abetting Reimer in trespassing and destruction of property on Koenig's posted Private Property, No Trespassing lands.

33. Defendant Reimer has represented to TCSD that he accidentally hit fence/fence post belonging to Koenig. Upon an actual inspection TCSD would have discovered that Reimer had deliberately hit the post more than once, on one occasion, three (3) separate set of marks prove that he was deliberately trying to break off the fence posts, and cause the fence to fail in keeping Koenig's livestock contained.

34. After Reimer's deliberate attempt to break off the fence post, [Para. 31, supra] he caused the fence wires to be loosen to a point that the very next day, three (3) of Koenig's horses got out into his Barley field. Whereupon he called TCSD and complained.

35. TCSD dispatch called Koenig about it, Koenig informed dispatch that if Reimer hadn't been destroying Koenig's fence the livestock would not have gotten out. TCSD deliberately and intentionally failed to send out any Deputies to come out to the property to conduct any form of actual investigation.

36. TCSD failure to investigate has occurred many times and is a continuing issue of their selective law enforcement investigation, unwritten practices and policy.

37. District is composed of JASON LOVAS; ANDY NESET; JASON SIEGERT; GARY THOMPSON; JOEL HALVERSON; and NETTIE JOHNSON.

38. District, knows or should have known that the Due Process and Equal Protection Clauses of the United States Constitution and Constitution of the State of North Dakota required that Koenig be served with a copy of the Complaint before any form of action was taken by the District.

39. District knew or should have known that Koenig be notified of any and all Hearing Date(s) on the Complaint and allowed to be heard upon the contents thereof prior to any decisions being rendered, as such, knowingly, and deliberately failing to do so, violated Plaintiffs Due Process and Equal Protection of Law rights under State and Federal law.

40. District, knows or should have known that their procedures clearly violated well established Federal Law and State Law, resulting in a flawed arbitrary decision.

41. Based on information and belief, believed to be true, Defendant Jason Siegert is

related too, and/or associated with Defendant Curtis Reimer, thus the District hearing board was not composed of impartial, independent or neutral members.

42. Defendant Siegert, knew or should have known that the law requires impartial hearing boards, and that his relationship with Defendant Reimer required him to remove or disqualify himself from the hearing/decision making process of Defendant District.

43. Defendant Reimer's has annually engaged in earth moving activities, digging down on their property to facilitate better drainage of their farmed lands, thus creating the illusion of an embankment, resulting in the damming up of the poisonous runoff preventing limited runoff onto the adjoining property owned by Plaintiff, which is used for livestock grazing.

44. Defendants Reimer's has, for many years openly POSTED their property with signs that they are using POISON, which is HARMFUL TO LIVESTOCK.

45. Defendant Reimer's has told Plaintiff Koenig that he intends to cause Koenig financial consequences and intends to poison all of Koenig's livestock. Reimer's has told Koenig that this is not livestock country, even though livestock are part of the rural economy in the State of North Dakota.

46. It is believed that Reimer's has never had a livestock enterprise and inherited the lands thus not appreciating the farmers who have livestock nor recognizing his destructive farming practices is the actual cause of many problems.

47. Defendant OHNSTAD TWICHELL, is a law firm incorporated under North Dakota laws, with Defendant SEAN M. FREDRICKS, a member of said law firm. [HEREINAFTER referred to as Law firm].

48. Plaintiff Koenig firmly believes Law Firm has an actual conflict of interest, in that Koenig has discussed extensively the filing of legal action against Defendant Reimer's for his criminal activities of poisoning his property and livestock.

49. Law Firm member Sean Fredricks, failed to investigate/discover that an actual conflict of interest may exists, in his representation of District in this matter concerning Defendant Reimer's complaint.

50. Law Firm, knows that the Due Process and Equal Protection of Law provided by both the U.S. Constitution and State of North Dakota Constitution required that Koenig be provided with Notice of the Complaint; given Notice of any hearing date(s) and the opportunity to be heard prior to any decision by the District.

51. Defendant Fredrick's failure to so advise the District can only be deemed as part of a conspiracy to deprive Koenig of his property without any form of Due Process or Equal Protection of Law.

52. Defendant Fredrick's representation in the District's denial of Koenig's right to request a hearing, after the fact, that Koenig had deliberately failed to accept the certified letter from said Defendant Law Firm, resulted in his forfeiture of right to be heard, is false, and frivolous, inasmuch as Due Process requires Actual knowledge that a Complaint had been filed; Actual Knowledge that the District held a Hearing on the Complaint and Actual Knowledge of their decision. No Actual Knowledge was ever given by the District or Law Firm prior to any form of action by the District.

53. Defendant Fredrick's representation that a persons apparent failure to accept a certified letter from said law firm, implies knowledge of actual receipt of the notice of

certified letter, of which Plaintiff never received.

54. Plaintiff has many times received U.S. Mail not addressed to him, found many times mail addressed to others stuck inside other mail, newspapers, magazines, etc, thus assumes that the same happens to his mail.

55. Plaintiff receives much mail that is garbage and never reads but gets thrown into the trash. If by chance mail addressed to someone else happens to be stuck inside a newspaper or magazine that Plaintiff throws into the trash, the addressee thereof will never receive that item of mail. Plaintiff firmly believes other people do the same with his mail.

56. Defendant Law Firm and Defendant Fredrick's, are believed to be part of the legal culture in the State of North Dakota designed to deprive the citizens of the right to legal process by and through the denial of meaningful access to the courts, deprivation of rights without Due Process or the Equal Protection of Law.

57. Plaintiff Koenig has experienced this legal culture at all levels in the State and Federal Courts in the State of North Dakota and as a result cannot receive justice in North Dakota Courts.

58. Koenig's property is properly and legally posted, PRIVATE PROPERTY, NO TRESPASSING, with a gate across the driveway, the only legal access to the property.

59. Defendant MOORE ENGINEERING, [HEREINAFTER MOORE] has never asked Koenig for permission to enter his property for any reason whatsoever.

60. On the day that MOORE was supposedly denied permission to Koenig's property, Koenig was out in a barn tending livestock. Happened to exit the barn and seen a vehicle

next to his property on land believed owned by Defendant Stacey Reimer and farmed by Defendant Reimer. Koenig thereafter walked over to the vicinity of his land where the MOORE vehicle occupants were, observed one individual with a survey stick next to his fence line and actually on Koenig's property. The fence line actually 3-5 feet on Koenig's side of the survey marker.

61. Koenig asked MOORE individual, what's going on. Of which MOORE individual responded that it was "confidential information." Thereafter never saying anything more to Koenig.

62. Koenig thereafter continued to observe MOORE individual's activities. Koenig even pointed out to MOORE individual that a survey marker was immediately in front of him and later pointed out another survey marker [one that is 4-5 feet past the fence line]. Shortly thereafter, 5 minutes or so, MOORE apparently completed their surveying and left the area.

63. Koenig had observed Defendant Reimer immediately leave the scene when, Defendant Reimer had apparently seen Koenig heading towards the location where MOORE was surveying.

64. Defendant Reimer has accused Koenig of acidifying his land, a false and frivolous accusation, whereas, water runs off of Reimer's land onto Koenig's land, not vice versa, and any septic tank drains would have been evident to Reimer at the time of installation had they ever occurred. Koenig has never done any form of drainage that would have affected Reimer property or anyone else.

65. Defendant Reimer has fraudulently obtained Federal Disaster payments, Federal Crop

insurance payments, thereafter informing Koenig that his livestock had caused damage to his crops demanding a payment therefore, which, if not for Reimer's criminal activity of Destruction of Koenig's fences, the livestock would not have gotten out, but the fact remains, Reimer had already been paid twice for the crop, loss and harvest, and was intent upon defrauding Koenig for a third payment.

66. Defendant Reimer's apparent lack of knowledge of good farming practices is evident in the noxious poisonous weeds that kill off his planted crops. Reimer's farming practices only spreads the poisonous weeds, which enter Plaintiff's land and the Federal Waterway in times of runoff.

67. Koenig firmly believes that all named individuals from BLANCHARD, DISTRICT, TCSD, LAW FIRM AND MOORE, are aiding and abetting Defendant Reimer in violating Federal law to put poison into a Federal Waterway, poison Koenig's livestock and property, destruction of property and a part of the conspiracy to fulfill Reimer's criminal activities. Knowing that the State and Federal Courts in the State of North Dakota are unwilling to protect the rights of Koenig in preventing Defendant Reimer's criminal activities of deliberate and intentional destruction of property, introducing poison into federal waterways and intentional poisoning of livestock.

68. Koenig is being deliberately and intentionally caused to suffer emotional and mental stress, financial issues, devaluation of property etc, by Defendant Reimer's criminal activities with the assistance of other named defendants.

## PRAYER FOR RELIEF

### 69. DECLARATORY RELIEF

Plaintiff requests this Court to declare that:

A) EPA has failed to protect the federal waterways through the implementation of mandatory rules, regulations, requirements that would aid the organic farmers in preventing the deliberate and intentional introduction of poison by the conventional chemical poison user farmers onto their lands and into federal waterways;

B) EPA has failed to protect the people and safe drinking water requirements through its failure to implement mandatory containment ponds be erected and monitored when known users of poisonous chemicals openly admit to use of poisons that would be harmful to the people and livestock and federal waterways.

C) EPA has failed to implement mandatory rules, regulations, and requirements that require the State to order mandatory containment ponds on property posted that POISON is being used that is hazardous to livestock and public safety and welfare.

D) EPA has failed to carry out the intent of Congress in protecting federal waterways and the safety of the public from poisonous substances being deliberately introduced into Federal Waterways.

E) STATE has failed to implement mandatory rules, regulations and requirements for local boards to follow when addressing water issues.

F) STATE has failed to protect Federal Waterways and Organic Farmers from the deliberate and intentional introduction of poisonous chemicals onto their lands and or into

Federal Waterways by and/or through other land owners/farmers use of poisonous chemicals.

G) STATE has failed to mandate mandatory compliance with its Open Meetings Laws; Due Process and Equal Protection Laws of the U. S. Constitution or the Constitution of the State of North Dakota.

H) DISTRICT knowingly failed to comply with the well established requirements of the Due Process and Equal Protection of Law Clauses of the U. S. Constitution.

I) BLANCHARD knowingly failed to comply with the well established requirements of the Due Process and Equal Protection of Law Clauses of the U.S. Constitution.

J) TCSD knowingly engages in selective, discriminatory law enforcement practices, has an apparent unwritten policy that violates the Due Process and Equal Protection Rights of Plaintiff in violation of the U.S. Constitution.

K) LAW FIRM and Defendant Hendricks have knowingly engaged in legal representation that constitutes an actual conflict of interest; knowingly engaged in providing legal assistance that violates well established U.S. Supreme Court precedents of Due Process and Equal Protection.

L) MOORE has engaged in false and deceptive practices that violate well established laws, practices and procedures protected by the Due Process and Equal Protection of Law of the United States and State of North Dakota Constitutions.

M) REIMER'S has engaged in criminal, conspiratorial activities that, except for the selective, discriminatory law enforcement practices of Defendant TCSD, should have resulted in lengthy prison sentences and fines and injunctions to prevent the deliberate

and intentional poisoning of livestock, private property and Federal Waterways, and other criminal activities of destruction of private property.

70. **INJUNCTIVE RELIEF**

A) An injunction against Defendant State from any further arbitrary enforcement of it's water related Statutes, regulations etc until that time that the State legislature implements mandatory Due Process and Equal Protection of Law Requirements.

B) An Injunction against Defendant District from carrying out its Order for Plaintiff to remove any non existent blockage of alleged natural waterway;

C) An Injunction mandating that Defendant District Order Defendant Reimer's to install, and erect sufficiently large Containment Ponds on his lands to contain all runoff water from entering the Federal Waterway and/or onto Plaintiff Koenig's lands.

D) An Injunction mandating that Defendant District be required to prohibit all drainage through the establishment of Containment Ponds, from lands posted with signs that poison is being utilized which may be hazardous to livestock from entering a Federal Waterway or any other Water system that may be used for Public health, safety and welfare.

E) An Injunction mandating that Defendant District be required to prohibit all drainage, through the establishment of Containment Ponds from all lands within said District where the use of poisonous chemicals which maybe hazardous to the Public Health and Safety and/or livestock are being utilized, and which may drain into a Federal Waterway or onto lands utilized by Organic and/or livestock farmers.

F) An Injunction mandating that Defendant Reimer's be prohibited from the use of any

form of poison or chemicals within one thousand feet (1000) of a Federal Waterway and/or Koenig's property.

G) An Injunction mandating that Defendant Reimer's be required to install Containment Ponds on all his land to contain all runoff and mandating that Reimer's be required to install pumps to pump said waters back onto his own lands with zero runoff and full monitoring by District and other interested/affected parties including Plaintiff Koenig.

71. **MONETARY RELIEF**

A) Plaintiff requests Two Million Dollars for damages to his property from the deliberate and intentional poisoning of his trees, livestock, destruction of fences, illegal digging of ditches to allow poisonous runoff onto his property, loss of use of his property caused by Defendants.

B) Plaintiff requests Five Million Dollars for emotional and mental stress caused by Defendants conspiratorial actions of aiding and abetting Defendant Reimer's in carrying out his criminal activities to introduce poison into a Federal Waterway and on Koenig's property.

C) Plaintiff requests Punitive Damages as assessed by a Trial by Jury.

D) For all costs, fees and Attorneys fees associated with bringing this cause of action.

E) For such other and further costs and fees allowed by law and/or Ordered by the Court.

FOR A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Dated this 11th day of May, 2018.

*La Verne Koenig* (signature)
La Verne Koenig
15520 Hwy 200A SE
Blanchard, North Dakota 58009-9326
Tele: 701-430-0096

Email: olecowboy7053@gmail.com

I certify, testify under penalty of perjury, that the foregoing instrument is true and correct to the best of my knowledge, information and belief, as to matters based on belief, I firmly believe them to be true also. Attested to as provided by 28 U.S.C. 1746.

*La Verne Koenig* (signature)
La Verne Koenig